DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Michael Pulliam ("Father") appeals from the decision of the Lorain County Court of Common Pleas, Juvenile Division, terminating his parental rights as to his minor child, David Pulliam ("David"). We affirm.
David was born on December 13, 1990, to Father and Kimberly Pulliam ("Mother"). Three other children were born to Father and Mother. On January 30, 1995, Lorain County Children Services ("LCCS") filed a complaint in the trial court, alleging that David and his siblings were neglected and dependent children, and moved for temporary custody. The trial court granted the motion for temporary custody. A case plan was filed that set as a goal returning the children to Father and Mother. A support order was also entered against Father and Mother. On November 25, 1996, David was placed in the custody of his maternal grandmother, and the proceedings as to David were discontinued. After a hearing, permanent custody of David's three siblings was granted to LCCS.
In January 1997, David's maternal grandmother indicated that she was no longer able to care for him due to her declining health, and David was returned to the custody of LCCS. LCCS then again sought temporary custody of David, and the trial court granted the motion. An amended case plan was filed in April 1997. Under the case plan, the goal was to reunite David with Father and Mother after six months. Six objectives were set for Father: (1) Father was to visit David once per week and develop a parent/child relationship with David; (2) Father was to be knowledgeable of the legal status of David and keep apprised of all legal proceedings; (3) Father was to utilize parenting counseling services and obtain drug and alcohol assessment and/or treatment; (4) Father was to participate in family counseling; (5) Father was to establish stable housing and adequate financial resources and budget his finances to provide for David; and (6) Father was to make regular payments on the child support order. Each of these objectives were to be met by October 31, 1997. Case plan objectives were also set for Mother.
On November 18, 1997, LCCS moved for permanent custody of David. A hearing was held on January 20, 1998. Both Father and Mother were represented by counsel, but neither parent was present and their whereabouts were unknown. After the hearing, the trial court granted the motion for permanent custody and terminated the parental rights of Father and Mother.[1] Father now appeals to this court.
Father asserts one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF O.R.C. 2151.414, THE FOURTEENTH
AND NINTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 1 OF THE OHIO CONSTITUTION, WHEN IT TERMINATED THE PARENTAL RIGHTS OF APPELLANT AND GRANTED PERMANENT CUSTODY OF THE MINOR CHILD TO LORAIN COUNTY CHILDREN SERVICES, WHERE THE EVIDENCE FAILED TO SATISFY THE REQUISITE STANDARD OF PROOF.
Father argues that the evidence did not rise to the level of clear and convincing evidence required to grant permanent custody of David to LCCS. We disagree.
R.C. 2151.414(B) states that a juvenile court may grant permanent custody of a child to an agency such as LCCS if two conditions are met. First, the trial court must find that granting permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). Second, the trial court must find that "[t]he child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[,]" R.C. 2151.414(B)(1), based on an analysis under R.C. 2151.414(E). These findings must be supported by clear and convincing evidence. R.C. 2151.414(B). If the judgment of the juvenile court is supported by competent credible evidence going to all of the essential elements of the case, this court will not disturb the trial court's judgment. In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported, at 7.
We will first address the issue of whether David could not have been placed with Father within a reasonable time or should not have been placed with Father. Under R.C. 2151.414(E), if a juvenile court makes one of twelve enumerated findings, then the court must find that the child cannot be placed with either parent within a reasonable time or that the child should not be placed with either parent. One of these findings is that
 [f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
R.C. 2151.414(E)(1). In the case at bar, the trial court made such a finding, based on the evidence adduced at the hearing.
The only witnesses at the hearing in the case at bar were two LCCS case workers who had dealt with David's case and an investigator for the Lorain County Child Support Enforcement Agency. Their testimony showed that Father failed to make efforts to meet the case plan in David's case. Father stated to the case workers that he was employed doing odd jobs working on cars but that he did not want to have to pay taxes or Social Security on his wages. During the six month period of the case plan, Father obtained housing by living with a girlfriend, but when the girlfriend moved out, Father stopped living there. Father was inconsistent in his visitation with David. When David was brought to visit him, David would be cared for by Father's girlfriend while Father returned to bed to sleep. Toward the end of the six months, the visits stopped altogether. After October 7, 1997, Father disappeared and had no further contact with LCCS. During the entire period from 1995 to the January 20, 1998 hearing, Father did not make a single support payment under the child support order previously entered. Father also never appeared for a drug assessment; he told a case worker that he refused to be assessed because he smoked marijuana and would not give up using the drug.
Based on the testimony presented at the hearing, there is clear and convincing evidence that Father continuously and repeatedly failed to substantially remedy the conditions that resulted in David being placed outside the home. Most telling are Father's failure to make support payments and his refusal to give up marijuana in order to be reunited with David. Therefore, the trial court correctly determined that R.C. 2151.414(E)(1) had been met, mandating a finding that David could not or should not be placed with Father within a reasonable time.
We now turn to the issue of whether granting permanent custody to LCCS was in David's best interest. In determining the best interest of the child, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
At the hearing, the testimony showed that David had not been in the custody of Father or Mother since 1995. David's relationship with Father was described as follows:
 It's sort of like it's a guy kind of thing. [David] needs him. His father would let him help him work with the car and do those types of things with him. He liked that. He liked being involved in that activity, because I don't think he got it anyplace [sic] else. But as far as nurturing, we had to remind Father he had to feed David. I subsequently found out David would be taken to a relative's house many times on the visit. I didn't know that at the time. David asked about his father, but only in a sense of some guy somewhere, some person he should have contact with, but I don't think in a caring, nurturing father/child type relationship, no, I don't think so.
When Father disappeared in October 1997, he did so by telling a case worker, without informing David. The evidence also showed that David would likely be adopted by a family in conjunction with two of his siblings and that David would be able to maintain contact with the third sibling. The two LCCS case workers and David's guardian ad litem all opined that permanent custody would be in David's best interest.
Based on the evidence presented at the hearing, there is clear and convincing evidence that granting permanent custody of David to LCCS was in David's best interest. Father relies heavily on the first part of the testimony relating to the father/child relationship quoted above, and argues that severing the relationship is not in David's best interest. However, the remainder of the quoted testimony does not show that Father's interaction with David was such that it was in David's best interest to be placed with Father. Indeed, the whole of the testimony reveals that Father got a second chance to bring David back into his life but instead squandered that opportunity. The trial court correctly determined that it was in David's best interest that he be placed with LCCS.
The trial court's decision is supported by clear and convincing evidence. Accordingly, Father's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Lorain, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. ________________________________ EDWARD J. MAHONEY, FOR THE COURT
BAIRD, P. J.
CARR, J., CONCUR
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] Mother is not involved in the instant appeal. As such, all discussion as to the termination of parental rights will be limited to Father.